Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | **'14 CV 2129 MMA JMA** |
| LOU BAKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| Plaintiff, | COMPLAINT |
| vs. | CLASS ACTION |
| SEAWORLD ENTERTAINMENT, INC., JIM ATCHISON, JAMES HEANEY, DAN BROWN, MARC SWANSON, DAVID F. D'ALESSANDRO, AND THE BLACKSTONE GROUP L.P. | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Lou Baker, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against SeaWorld Entertainment, Inc. ("SEAS" or the "Company"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants'

1

public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons or entities who purchased SEAS stock pursuant to and/or traceable to the Company's registration statement and prospectus issued in connection with the Company's initial public offering commenced on or after April 18, 2013, including open market purchases of SEAS securities during the period between April 18, 2013 to August 13, 2014, inclusive (the "Class Period"), seeking to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.     On April 18, 2013 the Company filed with the SEC an amended Registration Statement on Form S-1/A in connection with the an initial public offering (the "IPO").  The Registration Statement also contained a Prospectus and both documents contained, among other things, the Company's financial results for the fiscal years ended December 31, 2012.

3.      The Registration Statement was declared effective on April 18, 2013, and the Company filed the final prospectus with the SEC on April 19, 2013.

4.      The IPO was for 10,000,000 shares of the Company's common stock at a price of $27 per share.

5.      Throughout the Class Period, the Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance, and internal controls.

6.      When truth a corrective disclosure was filed by the Company on August 13, 2014, SEAS's stock price dropped $9.25 per share or 32.9%.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77(o).

8.      Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 22 of the Securities Act, 15 U.S.C. §77v.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and Section 22 of the Securities Act, 15 U.S.C. § 77v.  Defendants maintain their principal executive offices in this District

and many of the acts, practices and transactions complained of herein occurred in substantial part in this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the NYSE.

11.     SEAS operates a SeaWorld San Diego theme park at 500 Sea World Drive, San Diego, CA 92109, located in this District.

12.     There is currently other litigation involving Defendants in this district.

13.     Events documented in the movie *Blackfish,* directed by Gabriela Cowperthwaite and released in 2013, which affected the price of SEAS stock, took place in this District.

## **PARTIES**

14.     Plaintiff Lou Baker, as set forth in the attached PSLRA certification, purchased SEAS securities at artificially inflated prices during the Class Period and has been damaged thereby.

15.     Defendant SEAS is a Delaware Corporation with its principal executive offices in Orlando, Florida. SEAS is a theme park and entertainment company with SeaWorld locations in Orlando, Florida; San Diego, California; and San Antonio, Texas. SEAS also operates Busch Gardens, Sesame Place, Discovery Cove, Aquatica, Adventure Island, and Water Country USA theme parks.

16.     Defendant Jim Atchison ("Atchison") at all relevant times herein was the Company's Chief Executive Officer, President and Director.

17.     Defendant James Heaney ("Heaney") at all relevant times herein was the Company's Chief Financial Officer.

18.     Defendant Dan Brown ("Brown") at all relevant times herein was the Chief Operating Officer of SeaWorld, Discovery Cove and Aquatica Parks.

19.     Defendant Marc Swanson ("Swanson") at all relevant times herein was the Chief Accounting Officer.

20.     Defendant David F. D'Alessandro ("D'Alessandro") at all relevant times herein was the Chairman of the Board of Directors.

21.     Defendants Atchison, Heaney, Brown, Swanson, and D'Alessandro, are collectively the "Individual Defendants".

22.     Defendant The Blackstone Group L.P. ("Blackstone") is a full service investment banking company.  Blackstone's headquarters are located in New York, New York.  Blackstone was the majority shareholder of SEAS.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who) purchased SEAS common stock pursuant and/or traceable to its IPO and those who purchased the securities of SEAS during the Class Period. Excluded from the Class are the officers and directors of the Company at all relevant times, members

of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company's common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by SEAS or its transfer agent, and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of the Company; and

(c)  to what extent the members of the Class have sustained damages, and the proper measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

29.    On January 19, 2013 Gabriela Cowperthwaite's documentary, *Blackfish*, premiered at the Sundance Film Festival. On January 22, 2013, CNN Films and Magnolia Pictures acquired the rights to *Blackfish.*

30.    *Blackfish* follows the 39 year tumultuous history of Tilikum, a SeaWorld Orca Whale, who has been involved in the death or serious injury of several SeaWorld trainers. *Blackfish* is comprised of interviews of former SeaWorld trainers, SeaWorld spectators and other experts such as Occupational Safety and Health Administration ("OSHA") employees and scientists.

31.     The film revealed for the first time that SEAS: (a) had improperly cared for and mistreated its Orca population causing mental distress to the Company's Orca population affecting trainer and audience safety; (b) continued to feature an Orca that had killed and injured numerous trainers; and (c) consequently exposed the Company to material and uncertainties that could adversely impact attendance at its family oriented parks.

32.     On April 18, 2013 the Company filed with the SEC an amended Registration Statement on Form S-1/A in connection with the IPO. The Registration Statement also contained a Prospectus and both documents contained, among other things, the Company's financial results for the fiscal years ended December 31, 2010, December 31, 2011, and December 31, 2012.

33.     The Registration Statement declared effective on April 18, 2013 and the Company filed the final prospectus with the SEC on April 19, 2013.

34.     The Registration Statement and Prospectus was materially false because it failed to disclose that SEAS (a) had improperly cared for and mistreated its Orca population causing mental distress to the Company's Orca population affecting trainer and audience safety; (b) continued to feature an Orca that had killed and injured numerous trainers; and (c) consequently exposed the Company to material and uncertainties that could adversely impact attendance at its family oriented parks.

35.    On May 23, 2013 the Company filed its quarterly report for first quarter ended March 31, 2013 on Form 10-Q, signed by Defendants Heaney and Swanson.

36.    Attached to the 10-Q were separately signed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants Atchison and Heaney. In addition to stating that each of the them were responsible for establishing maintaining disclosure controls and procedures and internal control over financial reporting, the certifications falsely stated, in part, that the 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading…";(2) "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report and report financial information" was disclosed to the Company's auditor, audit committee and board; and (3) "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls over financial reporting" were disclosed to the Company's board, auditors, and audit committee.

37.    On July 19, 2013 *Blackfish* was released in theaters in New York, New York, Los Angeles, California, and Toronto, Canada.

38.     On August 13, 2013 the Company filed a press release on Form 8-K reporting the financial results for the first half of 2013 reporting a 9% drop in attendance.  SEAS falsely claimed that the drop in attendance was a product of the timing of Easter, when in reality, the bad publicity from the *Blackfish* film caused families to stay away from SEAS parks.

39.     On August 14, 2013 the Company filed its second quarter ended June 30, 2013 results with the SEC on Form 10-Q, signed by Defendants Heaney and Swanson.

40.     The 10-Q also included SOX certifications executed by Defendants Atchison and Heaney that was in sum and substance the same as the SOX certifications filed with the 1Q2013 10-Q, attesting to the accuracy of the 2Q2013 10-Q.

41.     CNN aired *Blackfish* on its network on October 24, 2013. Nearly 21 million people watched *Blackfish* on CNN during that broadcast – an unusually large audience for CNN programming.

42.     *Blackfish* was released on DVD in the United States on November 12, 2013.

43.     CNN has aired *Blackfish* multiple times since the premier on October 24, 2013.

44.     The dissemination of *Blackfish* sparked a nationwide debate about whales in captivity and the ethics of SeaWorld.

45.     On November 14, 2013 the Company filed its third quarter ended September 30, 2013 results with the SEC on Form 10-Q, signed by Defendants Heaney and Swanson. The 10-Q also included SOX certifications executed by Defendants Atchison and Heaney that was in sum and substance the same as the SOX certifications filed with the  1Q2013 10-Q, attesting to the accuracy of the 3Q2013 10-Q.

46.     On December 9, 2013 the Company issued a press release on Form 8-K announcing a Share Repurchase Agreement with entities managed by an affiliate of The Blackstone Group L.P.  In the agreement, SEAS agreed to "repurchase 1.5 million shares of its common stock directly from the Selling Stockholders in a private, non-underwritten transaction at a price per share equal to the price per share that would be paid to the Selling Stockholders by the underwriters in the proposed underwritten secondary offering being made pursuant to the Company's registration statement on Form S-1."

47.     On December 17, 2013 the Company filed a press release on Form 8-K stating: "The previously announced underwritten secondary offering (the "Offering") by the selling stockholders (the "Selling Stockholders") affiliated with The Blackstone Group L.P. of 18,000,000 shares of common stock of SeaWorld Entertainment, Inc. (the "Company"), at a price of $30.00 per share, closed on December 17, 2013. The Selling Stockholders received all of the net proceeds from the Offering. No shares were sold by the Company. Concurrently with the closing

of the Offering, the Company repurchased 1,500,000 shares of its common stock directly from the Selling Stockholders in a private, non-underwritten transaction at a price per share equal to the price per share that was paid to the Selling Stockholders by the underwriters in the Offering."

48.    On March 13, 2014 the Company filed a press release on Form 8-K reporting the financial results for the fourth quarter and full year of 2013. To explain a 4.1% decline in attendance in 2013, Defendant Atchison falsely stated that "contributing to the decline in full year attendance was unexpected adverse weather conditions in the Company's second quarter and July as well as the impact of an early Easter in 2013." In reality, the decline in attendance was the result of the mounting backlash from the *Blackfish* film.

49.    On March 21, 2014 the Company filed its Form 10-K for the fiscal year ended December 31, 2013, signed by Defendants Atchison, Heaney, Swanson, and D'Alessandro.   The 10-K also included SOX certifications executed by Defendants Atchison and Heaney,  that were in sum and substance the same as the SOX certifications filed with the F1Q2013 10-Q, attesting to the accuracy of the 10-K.

50.    On April 2, 2014 the Company filed a press release on Form 8-K stating that on March 28, 2014, SeaWorld Entertainment, Inc. entered into an agreement another Share Repurchase Agreement with certain entities managed by an affiliate of The Blackstone Group L.P. SEAS agreed to repurchase 1.75 million

shares of its common stock directly from the Selling Stockholders in a private, non-underwritten transaction  at a price per share equal to the price per share that would be paid to the Selling Stockholders by the underwriters in the proposed underwritten secondary offering being made pursuant to the Company's registration statement on Form S-1.

51.    On April 2, 2014 Company filed Amendment 1 to the Registration Statement Form S-1 for a secondary offering. The secondary offering went into effect on April 3, 2014.

52.    On April 3, 2014 the Company filed a press release on Form 8-K announcing the offering of selling stock affiliated with The Blackstone Group L.P. The secondary offering was comprised of 15,000,000 shares at $30 per share. The sellers granted the underwriters a 30-day option to purchase up to an additional 2,250,000 shares from the selling stockholders.

53.    The prospectus was filed with the SEC on April 4, 2014.

54.    On April 9, 2014 the Company filed a press release on Form 8-K announcing the results of the secondary offering. 17,250,000 shares associated with Blackstone were sold at $30 per share. No shares were sold by SEAS.

55.    On May 14, 2014 the Company filed a press release on Form 8-K about the financial results of the first quarter of 2014. In the press release, Defendant Atchison falsely stated that a reason for lower attendance than normal during this time period was a result of the shift of Easter and Spring Break into the

second quarter.  The reality however was that the decline in attendance was the result of the *Blackfish* film.

56.     On May 15, 2014 the Company filed its first quarter ended March 31, 2014 results with the SEC on Form 10-Q, signed by Defendants Heaney and Swanson. The 10-Q also included SOX certifications executed by Defendants Atchison and Heaney that was in sum and substance the same as the SOX certifications filed with the  1Q2013 10-Q, attesting to the accuracy of the 1Q2014 10-Q.

57.     In the August 13, 2014 press release SEAS finally came clean that the decline in attendance was the results from the negative publicity from the *Blackfish* film.  The press release states in relevant part:

> In addition, the Company believes attendance in the quarter was impacted by demand pressures related to recent media attention surrounding proposed legislation in the state of California.

58.     The proposed California legislation referenced in the press release, the Orca Welfare and Safety Act, would outlaw keeping Orca Whales in captivity for the purpose of entertainment. If violated, the law could impose a $100,000 fine, six months in jail, or both. The legislation arose out of the public conversation that was ignited by the documentary *Blackfish.*

59.     The August 13, 2014 press release states, "the Company now expects full year 2014 revenue and Adjusted EBITDA to be down in the range of 6-7% and 14-16%, respectively, compared to the prior year."

60.     Data compiled by Bloomberg LLP and published in the August 13, 2014 article, "SeaWorld Drops as Killer Whale Controversy Hurts Sales" by Cécile Daurat[1], reported that "Blackstone, which had owned all of SeaWorld's equity, has since cut its stake to 22 percent."

61.     The August 13, 2014 announcement caused the price of SEAS stock to plummet by $9.25 per share, or 32.9%.

62.     On August 14, 2014 the Company filed its second quarter ended June 30, 2014 results with the SEC on Form 10-Q, signed by Defendants Heaney and Swanson. The 10-Q also included SOX certifications executed by Defendants Atchison and Heaney that was in sum and substance the same as the SOX certifications filed with the  1Q2013 10-Q, attesting to the accuracy of the 2Q2014 10-Q.

63.     Attached to the 10-K were additional certifications pursuant to Section 906 of SOX signed by Defendants Atchison and Heaney.

---

[1] Article available http://www.bloomberg.com/news/2014-08-13/seaworld-slumps-29-after-revenue-profit-miss-estimates.html. (Last viewed on September 9, 2014).

**Applicability of Presumption of Reliance:**
**Fraud-on-the-Market Doctrine**

64.    At all relevant times, the market for SEAS's common stock was an efficient market for the following reasons, among others:

(a)    The Company's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, SEAS filed periodic public reports with the SEC and the NYSE;

(c)    SEAS regularly communicated with public investors via established market   communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other   wide-ranging   public   disclosures,   such   as communications with the financial press   and other similar reporting services;

(d)    SEAS was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of

these reports was publicly available and entered the public marketplace; and

65.     As a result of the foregoing, the market for the Company's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the Company's stock price.  Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices, and a presumption of reliance applies.

### Applicability of Presumption of Reliance:
### *Affiliated Ute*

66.     Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case,  positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).    All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against SEAS and Individual Defendants

67.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.    This Claim is asserted against SEAS and the Individual Defendants (collectively, "First Claim Defendants").

69.    During the Class Period, First Claim Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase SEAS's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, First Claim Defendants, and each of them, took the actions set forth herein.

70.    First Claim Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SEAS's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

71.     First Claim Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SEAS as specified herein.

75.     First Claim Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

76.     First Claim Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect

of concealing the Company's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by misstatements of the Company's financial condition throughout the Class Period, if the First Claim Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

77.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SEAS's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the First Claim Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the First Claim Defendants, but not disclosed in public statements by the First Claim Defendants during the Class Period, Plaintiff and the other members of the Class acquired SEAS common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

78.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be

true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SEAS's financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SEAS's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

79.    As a direct and proximate result of the First Claim Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of SEAS's securities during the Class Period.

80.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants and Blackstone

81.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.    The Individual Defendants and Blackstone acted as controlling persons of SEAS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company

with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

83.   In particular, each Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

84.   As set forth above, the First Claim Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

85.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

86.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

### THIRD CLAIM
**Against All Defendants Except Blackstone**
**for Violation of §11 of the Securities Act**

87.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is not based on, and does not allege, fraud.

88.     For purposes of this claim, Plaintiff expressly disclaims and excludes any allegations that could be construed as alleging fraud or intentional or reckless misconduct as this cause of action is based expressly on claims of strict liability and/or negligence under the Securities Act.

89.     This claim is asserted by Plaintiff against all Defendants by, and on behalf of, persons who acquired shares of the Company's securities pursuant to and/or traceable to Registration Statement in connection with the Offering.

90.     Individual Defendants as signatories of the Registration Statement, as directors and/or officers of SEAS and controlling persons of the issuer, owed to the holders of the securities obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts

required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, defendants are liable to the Class.

91.    None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

92.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public, which were contained in the Registration Statement that misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

93.    As a direct and proximate result of Defendants' acts and omissions in violation of the Securities Act, the market price of SEAS's securities sold in the Offering was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of SEAS's securities pursuant to the Registration Statement.

94.    SEAS is the issuer of the securities sold via the Registration Statement. As issuer of the securities, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

95.    At the times they obtained his shares of SEAS, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

96.    This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

97.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11 (e), from the defendants and each of them, jointly and severally.

### FOURTH CLAIM
### Violations of Section 15 of the Securities Act
### Against the Individual Defendants and Blackstone

98.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is not based on, and does not allege, fraud.

99.    This claim is asserted against each of the Individual Defendants and Blackstone, each of whom was a control person of SEAS during the relevant time period.

100.   For the reasons set forth above, SEAS is liable to Plaintiff and the members of the Class who purchased SEAS common stock in the IPO on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, under §§11 and 12(a)(2) of the Securities Act.

101.   The Individual Defendants were control persons of SEAS by virtue of, among other things, their positions as senior officers, directors and/or controlling shareholders of the Company.  Each was in a position to control and did in fact control SEAS and the false and misleading statements and omissions contained in the Registration Statement and Prospectus

102.   None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

103.   This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after SEAS common stock was sold to the Class in connection with the public offering.

104.   By reason of the misconduct alleged herein, for which SEAS is primarily liable, as set forth above, the Individual Defendants are jointly and

severally liable with and to the same extent as SEAS pursuant to Section 15 of the Securities Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)   Awarding rescissory damages; and

(e)   Awarding such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: September 9, 2014                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws