# Exhibit 1

**Table of Contents**

As filed with the Securities and Exchange Commission on April 18, 2013

Registration No. 333-185697

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# AMENDMENT NO. 6
# TO
# FORM S-1
# REGISTRATION STATEMENT
*UNDER*
*THE SECURITIES ACT OF 1933*

# SeaWorld Entertainment, Inc.
**(Exact name of registrant as specified in its charter)**

| **Delaware** | **7990** | **27-1220297** |
|---|---|---|
| **(State or other jurisdiction of incorporation or organization)** | **(Primary Standard Industrial Classification Code Number)** | **(I.R.S. Employer Identification Number)** |

**9205 South Park Center Loop, Suite 400**
**Orlando, Florida 32819**
**(407) 226-5011**
**(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)**

**G. Anthony (Tony) Taylor, Esq.**
**Chief Legal and Corporate Affairs Officer, General Counsel and Corporate Secretary**
**9205 South Park Center Loop, Suite 400**
**Orlando, Florida 32819**
**(407) 226-5011**
**(Name, address, including zip code, and telephone number, including area code, of agent for service)**

*With copies to:*

| | |
|---|---|
| **Igor Fert, Esq.** | **Marc D. Jaffe, Esq.** |
| **Simpson Thacher & Bartlett LLP** | **Cathy A. Birkeland, Esq.** |
| **425 Lexington Avenue** | **Michael A. Pucker, Esq.** |
| **New York, New York 10017** | **Latham & Watkins LLP** |
| **(212) 455-2000** | **885 Third Avenue** |
| | **New York, New York 10022-4834** |
| | **(212) 906-1200** |

**Approximate date of commencement of proposed sale to the public:** As soon as practicable after this Registration Statement is declared effective.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box:   ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.   ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.   ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

**CALCULATION OF REGISTRATION FEE**

| Title of Each Class of Securities to be Registered | Amount to be Registered(1) | Proposed Maximum Aggregate Offering Price per Share(1)(2) | Proposed Maximum Aggregate Offering Price(1)(2) | Amount of Registration Fee(3) |
|---|---|---|---|---|
| Common Stock, par value $0.01 per share | 29,900,000 | $27.00 | $807,300,000 | $110,115.72 |

(1) Includes shares/offering price of shares of common stock that the underwriters have the option to purchase. See "Underwriting (Conflicts of Interest)."

(2) This amount represents the proposed maximum aggregate offering price of the securities registered hereunder to be sold by the Registrant and the selling stockholders. These figures are estimated solely for the purpose of calculating the registration fee in accordance with Rule 457(a) under the Securities Act of 1933, as amended.

(3) The Registrant previously paid $84,704.40 of this amount.

**The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

**Exhibit 1**

**Page 1**

Table of Contents

***Incidents or adverse publicity concerning our theme parks or the theme park industry generally could harm our brands or reputation as well as negatively impact our revenues and profitability.***

Our brands and our reputation are among our most important assets. Our ability to attract and retain customers depends, in part, upon the external perceptions of the Company, the quality of our theme parks and services and our corporate and management integrity. The operation of theme parks involves the risk of accidents, illnesses, environmental incidents and other incidents which may negatively affect the perception of guest and employee safety, health, security and guest satisfaction and which could negatively impact our brands or reputation and our business and results of operations. An accident or an injury at any of our theme parks or at theme parks operated by competitors, particularly an accident or an injury involving the safety of guests and employees, that receives media attention, is the topic of a book, film, documentary or is otherwise the subject of public discussions, may harm our brands or reputation, cause a loss of consumer confidence in the Company, reduce attendance at our theme parks and negatively impact our results of operations. Such incidents have occurred in the past and may occur in the future. In addition, other types of adverse publicity concerning our business or the theme park industry generally could harm our brands, reputation and results of operations. The considerable expansion in the use of social media over recent years has compounded the impact of negative publicity.

***Animals in our care are important to our theme parks, and they could be exposed to infectious diseases.***

Many of our theme parks are distinguished from those of our competitors in that we offer guest interactions with animals. Individual animals, specific species of animals or groups of animals in our collection could be exposed to infectious diseases. While we have never had any such experiences, an outbreak of an infectious disease among any animals in our theme parks or the public's perception that a certain disease could be harmful to human health may materially adversely affect our animal collection, our business, financial condition and results of operations.

***We are subject to complex federal and state regulations governing the treatment of animals which can change and to claims and lawsuits by activist groups before government regulators and in the courts.***

We operate in a complex and evolving regulatory environment and are subject to various federal and state statutes and regulations and international treaties implemented by federal law. The states in which we operate also regulate zoological activity involving the import and export of exotic and native wildlife, endangered and/or otherwise protected species, zoological display and anti-cruelty statutes. We incur significant compliance costs in connection with these regulations and violation of such regulations could subject us to fines and penalties and result in the loss of our licenses and permits, which, if occurred, could impact our ability to display certain animals. Future amendments to existing statutes, regulations and treaties or new statutes, regulations and treaties may potentially restrict our ability to maintain our animals, or to acquire new ones to supplement or sustain our breeding programs or otherwise adversely affect our business.

Additionally, from time to time, animal activist and other third-party groups may make claims before government agencies and/or bring lawsuits against us. Such claims and lawsuits sometimes are based on allegations that we do not properly care for some of our featured animals. On other occasions, such claims and/or lawsuits are specifically designed to change existing law or enact new law in order to impede our ability to retain, exhibit, acquire or breed animals. While we seek to structure our operations to comply with all applicable federal and state laws and vigorously defend ourselves when sued, there are no assurances as to the outcome of future claims and lawsuits that could be brought against us. In addition, associated negative publicity could adversely affect our reputation and results of operations.

**Exhibit 1**

**Page 2**

Table of Contents

***Featuring animals at our theme parks involves risks.***

Our theme parks feature numerous displays and interactions that include animals. All animal enterprises involve some degree of risk. All animal interaction by our employees and our guests in attractions in our theme parks, where offered, involves risk. While we maintain strict safety procedures for the protection of our employees and guests, injuries or death, while rare, have occurred in the past. For example, in February 2010, a trainer was killed while engaged in an interaction with a killer whale. Following this incident, we were subject to an inspection by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA), which resulted in three citations concerning alleged violations of the Occupational Safety and Health Act and certain regulations thereunder. We have appealed certain of these citations and the appeal process is ongoing. In connection with this incident, we reviewed and revised our safety protocols and made certain safety-related facility enhancements. This incident has also been the subject of significant media attention, including television and newspaper coverage, a documentary and a book, as well as discussions in social media. This incident and similar events that may occur in the future may harm our reputation, reduce attendance and negatively impact our business, financial condition and results of operations.

In addition, seven killer whales are presently on loan to a third party. Although the occurrence of any accident or injury involving these killer whales would be outside of our control, any such occurrence could negatively affect our business and reputation.

We maintain insurance of the type and in amounts that we believe is commercially reasonable and that is available to animal enterprise related businesses in the theme park industry. We cannot predict the level of the premiums that we may be required to pay for subsequent insurance coverage, the level of any self-insurance retention applicable thereto, the level of aggregate coverage available, or the availability of coverage for specific risks.

***If we lose licenses and permits required to exhibit animals and/or violate laws and regulations, our business will be adversely affected.***

We are required to hold government licenses and permits, some of which are subject to yearly or periodic renewal, for purposes of possessing, exhibiting and maintaining animals. Although our theme parks' licenses and permits have always been renewed in the past, in the event that any of our licenses or permits are not renewed or any of our licenses or permits are revoked, portions of the affected theme park might not be able to remain open for purpose of displaying or retaining the animals covered by such license or permit. Such an outcome could materially adversely affect our business, financial condition and results of operations.

In addition, we are subject to periodic inspections by federal and state agencies and the subsequent issuance of inspection reports. While we believe that we comply with, or exceed, requisite care and maintenance standards that apply to our animals, government inspectors can cite us for alleged statutory or regulatory violations. In unusual instances when we are cited for an alleged deficiency, we are most often given the opportunity to correct any purported deficiencies without penalty. It is possible, however, that in some cases a federal or state regulator could seek to impose monetary fines on us. In the past, when we have been subjected to governmental claims for fines, the amounts involved were not material to our business, financial condition or results of operations. However, while highly unlikely, we cannot predict whether any future fines that regulators might seek to impose would materially adversely affect our business, financial condition or results of operations.

Moreover, many of the statutes under which we operate allow for the imposition of criminal sanctions. While neither of the foregoing situations are likely to occur, either could negatively affect the business, financial condition or results of operations at our theme parks.

20

**Exhibit 1**

**Page 3**