**NOONAN LANCE BOYER &**
    **BANACH LLP**
David J. Noonan (Bar No. 55966)
Ethan T. Boyer (Bar No. 173959)
701 Island Avenue, Suite 400
San Diego, California 92101
Tel: (619) 780-0880
dnoonan@noonanlance.com
eboyer@noonanlance.com

*Liaison Counsel for the Class*

[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU BAKER, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   vs.<br><br>SEAWORLD ENTERTAINMENT, INC., et al.,<br><br>   Defendants. | No. 3:14-cv-02129-MMA-AGS<br><br>**<u>CLASS ACTION</u>**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND AUTHORIZATION TO DISSEMINATE NOTICE OF THE SETTLEMENT TO THE CLASS**<br><br>Hearing Date: TBD<br>Time:    TBD<br>Courtroom:  3D<br>Judge:    Hon. Michael M. Anello |

## **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  SUMMARY OF THE LITIGATION ............................................................. 3

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .. 8

   A.   Standards Governing Approval of Class Action
        Settlements ........................................................................... 8

   B.   The Court "Will Likely Be Able to" Approve
        the Proposed Settlement Under Rule 23(e)(2) .................. 10

   1.   "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2) .... 10

   2.   The Settlement's Terms Are Adequate ......................................... 13

        a.   The Settlement Provides Substantial Relief, Especially
             in Light of the Costs, Risks, and Delay of Further
             Litigation ........................................................................... 13

        b.   The Proposed Settlement Does Not Unjustly Favor Any
             Class Member ..................................................................... 16

        c.   The Anticipated Request for Attorneys' Fees is
             Reasonable ......................................................................... 17

        d.   Class Representatives Have Identified All Agreements
             Made in Connection with the Settlement ........................... 18

IV.  THE COURT SHOULD APPROVE THE FORM, CONTENT, AND
     METHOD FOR DISSEMINATING NOTICE TO THE CLASS ................... 19

V.   THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD . 22

VI.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........... 24

VII. CONCLUSION ........................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ansell v. Laikin*,
  2012 U.S. Dist. LEXIS 198468 (C.D. Cal. July 11, 2012) ..................................... 17

*In re AXA Rosenberg Inv'r Litig.*,
  2012 WL 12920617 (N.D. Cal. Apr. 2, 2012) ........................................................ 18

*In re Banco Bradesco S.A. Sec. Litig.*,
  No. 1:16-cv-04155 (GHW), slip op. (S.D.N.Y. July 24, 2019) .......................... 20

*CALPERS v. ANZ Secs., Inc.*,
  137 S. Ct. 2042 (2017) ........................................................................................ 24

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 12

*Elliott v. Rolling Frito-Lay Sales, LP*,
  2014 U.S. Dist. LEXIS 83796 (C.D. Cal. June 12, 2014) ................................. 8, 9

*Good v. Nationwide Credit, Inc.*,
  314 F.R.D. 141 (E.D. Pa. 2016) .......................................................................... 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 17

*Harris v. Vector Mktg. Corp.*,
  2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .................................. 12

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
  2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010) ................................. 18

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...................................................... 19

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................ 8, 11

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012). Notice .................................................................. 19

*Livingston v. Toyota Motor Sales USA*,
  1995 U.S. Dist. LEXIS 21757 (N.D. Cal. May 30, 1995) ..................................... 13

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) .................................................................................. 23

*McLaughlin v. IDT Energy*,
  2018 WL 3642627 (E.D.N.Y. July 30, 2018) ......................................................... 20

*In re Med. Capital Sec. Litig.*,
  Case No. 10-2145-DOC, slip op. (C.D. Cal. May 6, 2013) ............................. 22, 23

*In re MGM Mirage Secs. Litig.*,
  708 Fed. Appx. 894 (9th Cir. 2017) ........................................................................ 12

*Middlesex Retirement System, et al. v. Quest Software, et al.*,
  Case No. 2:06-06863-DOC (C.D. Cal. Dec. 7, 2009) .............................................. 22

*Misra v. Decision One Mortg. Co.*,
  2009 U.S. Dist. LEXIS 119468 (C.D. Cal. Apr. 13, 2009) ..................................... 13

*Morales v. Stevco, Inc.*,
  2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ..................................... 12

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ............................................................................... 9

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  2016 WL 3369534 (S.D.N.Y. May 2, 2016) ........................................................... 18

*Nguyen v. Radient Pharms. Corp.*,
  2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) .............................. 10, 11, 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................... 8

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1994) ....................................................................................... 8

*Pace v. PetSmart*,
  No. 8:13-cv-00500-DOC-RNB, slip op. (C.D. Cal. Jan 14, 2015) ......................... 23

*In re Portal Software, Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ....................................... 22

*Rodriguez v. W. Publ'g Corp.*,
   2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Aug. 10, 2007) ..................................... 23

*Satchell v. Fed. Express Corp.*,
   2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ..................................... 12

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................ 11

*Tait v. BSH Home Appliances Corp.*,
   2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015) ..................................... 11

*Van Ba Ma v. Covidien Holding, Inc.*,
   2014 U.S. Dist. LEXIS 13296 (C.D. Cal. Jan. 31, 2014) ............................. 8, 9, 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................................ 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 23

*Williams v. Costco Wholesale Corp.*,
   2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ....................................... 9

*Young v. Polo Retail, LLC*,
   2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ...................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................................ 17

15 U.S.C. § 78u-4(a)(7)(E) ....................................................................................... 21

**Other Authorities**

17 C.F.R. § 240.10b-5 ................................................................................................ 3

Fed. R. Civ. P. 23.............................................................................................*passim*

William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015)................. 20

## I.    PRELIMINARY STATEMENT

Following more than five years of hard-fought litigation, Class Representatives have reached an agreement with Defendants to resolve all claims asserted in the Action and related claims in exchange for a $65,000,000.00 cash payment pursuant to the Stipulation. Class Representatives now seek the Court's preliminary approval of the Settlement under Rule 23 so that notice of the Settlement can be disseminated to the Class and the Settlement Fairness Hearing can be scheduled.

Class Representatives and Class Counsel believe that the proposed Settlement—reached shortly before a trial of this Action was set to commence—provides a significant benefit to the Class. In agreeing to resolve the Action, Class Representatives and Class Counsel were wholly aware of the strengths and weaknesses of the Class's claims and made a fully informed evaluation of the risks of continued litigation and the fairness of the Action's resolution at this time. While Class Representatives and Class Counsel believe the Class's claims against Defendants are meritorious and supported by substantial evidence developed during discovery and in preparation for trial, they also recognize that, in the absence of a settlement, they faced the significant risk that a trial of the Action and any appeals that followed might have resulted in a smaller recovery—or no recovery at all.

As detailed herein, the Settlement was achieved only after extensive litigation, which included, among other things: (i) a thorough investigation by Class Counsel into the claims asserted in the Action; (ii) the filing of the Consolidated Amended Class Action Complaint (ECF No. 42) and the Second Amended Consolidated Class Action Complaint (ECF No. 123); (iii) two rounds of briefing on Defendants' motions to dismiss the Complaints; (iv) conducting significant document discovery, which included reviewing more than 750,000 pages of documents produced by Defendants and various non-parties; (v) deposing and/or defending 37 depositions across the country; (vi) moving for and obtaining class certification and retaining and consulting

with an expert in connection therewith; (vi) exchanging expert reports on class certification and participating in depositions of the Parties' class certification experts; (vii) briefing Defendants' petition for permission to appeal the class certification order to the Ninth Circuit; (viii) exchanging expert reports and participating in depositions of the Parties' seven merits experts; (ix) briefing and arguing Defendants' motion for summary judgment; (x) briefing motions *in limine* and motions to exclude experts; and (xi) participating in extensive pre-trial preparations, including among many other things, exchanging witness lists, exhibit lists, deposition designations, evidentiary objections, draft jury instructions, and attending a pre-trial conference. Moreover, the Settlement is the product of protracted, arm's-length negotiations facilitated by an experienced and respected neutral mediator, Jed D. Melnick, Esq. of JAMS ("Melnick"), including multiple formal mediation sessions and mediation briefing.

At the Settlement Fairness Hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. At this time, Class Representatives request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement's terms and conditions may be provided to Class Members. Entry of the Preliminary Approval Order will, among other things:

- preliminarily approve the terms of the Settlement set forth in the Stipulation;
- approve the retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the administrator previously approved by the Court in connection with Class Notice, as Claims Administrator;
- approve the form and content of the Postcard Notice, Notice, Summary Notice, and Claim Form attached as Exhibits 1, 2, 3, and 4, respectively, to the Preliminary Approval Order;
- approve the proposed procedures for providing notice to the Class through mailing of the Postcard Notice, posting of the Notice and Claim Form on a website for the Settlement, and publication of the Summary Notice as the best notice practicable under the circumstances and complying with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

- set a schedule for: (i) providing notice of the Settlement to the Class; (ii) Class Members to object to the Settlement or any part thereof; (iii) Class Members to submit Claim Forms in order to be potentially eligible to share in the Net Settlement Fund; (iv) submitting papers in support of final approval of the Settlement and related matters; and (v) the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Class Counsel's request for attorneys' fees and Litigation Expenses, including reimbursement of costs to Class Representatives pursuant to the PSLRA.

For the reasons set forth herein, Class Representatives respectfully submit the Settlement warrants the Court's preliminary approval and respectfully request the Court enter the Preliminary Approval Order.

## II. SUMMARY OF THE LITIGATION

On September 9, 2014, this securities class action was commenced with the filing of the initial complaint captioned, *Baker v. SeaWorld Entm't, Inc., et al.*, No. 3:14-cv-02129-MMA-AGS. ECF No. 1. On November 10, 2014, Class Representatives (as well as others) moved to be appointed lead plaintiffs. ECF Nos. 10, 12, 13. On December 11, 2014, the Court appointed APERS and PBU as Lead Plaintiffs and approved their selection of Kessler Topaz Meltzer & Check, LLP and Nix Patterson & Roach, LLP (n/k/a Nix Patterson, LLP) as Co-Lead Counsel and Kirby Noonan Lance & Hoge LLP (n/k/a Noonan Lance Boyer & Banach LLP) as Liaison Counsel. ECF No. 25.

On February 27, 2015, Class Representatives filed the Consolidated Amended Class Action Complaint ("First Amended Complaint"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) ("Exchange Act"), and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o ("Securities Act"). ECF No. 42.

On May 29, 2015, the named defendants moved to dismiss the First Amended Complaint. ECF Nos. 88, 89. Following full briefing on the motions, the Court, by Order dated March 31, 2016, granted these motions and dismissed the First Amended

Complaint without prejudice. ECF No. 102. By the same Order, the Court granted Class Representatives leave to file an amended complaint addressing the deficiencies noted by the Court.

In accordance with the Court's March 2016 Order, Class Representatives, on May 31, 2016, filed the operative complaint in the Action—the Second Amended Consolidated Class Action Complaint ("Second Amended Complaint"), which dropped certain defendants and the Securities Act claims, and asserted violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants SeaWorld, James Atchison, James M. Heaney, and Marc Swanson, and violations of Section 20(a) of the Exchange Act against Messrs. Atchison, Heaney, and Swanson, and Blackstone. ECF No. 123. The Second Amended Complaint alleged that certain Defendants issued false and misleading statements and omissions in which they denied the 2013 documentary film *Blackfish* had any impact on attendance at certain of SeaWorld's parks or the Company's business.

On June 29, 2016, Defendants moved to dismiss the Second Amended Complaint for failure to state a claim under Rules 9(b) and 12(b)(6), as well as the PSLRA. ECF No. 128. Defendants' motion was fully briefed, and following oral argument, the Court denied Defendants' motion to dismiss on September 30, 2016. ECF Nos. 141 & 142. On October 28, 2016, Defendants filed their Answer to the Second Amended Complaint, denying the surviving allegations and asserting certain defenses. ECF No. 149. Thereafter, discovery in the Action commenced.

From October 2016 through March 2019, Class Representatives and Class Counsel engaged in extensive fact and expert discovery, including, *inter alia*: (i) taking and/or defending a total of 37 fact and expert depositions across the country; (ii) issuing 18 document requests to Defendants; (iii) serving 14 interrogatories to Defendants; (iv) serving 12 requests for admission to Defendants; (v) serving over 23 subpoenas for records on third parties; (vi) obtaining, reviewing, and analyzing over 750,000

pages of discovery produced by Defendants and third parties; (vii) reviewing voluminous written discovery responses from Defendants; (viii) reviewing and producing over 15,000 pages of client discovery, including extensive written discovery responses to document requests and interrogatories served by Defendants; (ix) reviewing and analyzing thousands of privilege log entries; and (x) exchanging opening and rebuttal reports for three merits expert witnesses designated by Class Representatives and analyzing such reports from four defense merits experts. The Parties filed and/or argued approximately eight discovery-related motions, including full rounds of briefing related to each. *See* ECF Nos. 157-158, 163-165, 170, 173-175, 194, 201, 248, 270, 275, 277, 312-318, 320-323, 327, 337-338.

On March 1, 2017, the Parties participated in a telephonic Early Neutral Evaluation and Case Management Conference pursuant to Local Rule 16.1(d) with Magistrate Judge Schopler. *See* ECF No. 160. The following day, March 2, 2017, Magistrate Judge Schopler entered a Scheduling Order Regulating Discovery and Other Pretrial Proceedings. ECF No. 166.

While pursuing merits discovery, Class Representatives filed their motion for class certification ("Class Certification Motion") on May 19, 2017, which was supported by a market efficiency and damages methodology analysis prepared by Class Representatives' expert, Chad Coffman, CFA. ECF Nos. 189, 190. Defendants opposed the Class Certification Motion on July 27, 2017. ECF No. 198. Class Representatives' motion was fully briefed and, following oral argument, the Court, by Order dated November 29, 2017, granted the Class Certification Motion, certifying the Class, appointing Lead Plaintiffs APERS and PBU as Class Representatives, and appointing Kessler Topaz Meltzer & Check, LLP and Nix Patterson & Roach, LLP (n/k/a Nix Patterson, LLP) as Class Counsel. ECF No. 259.

On December 13, 2017, Defendants filed a petition with the Court of Appeals for the Ninth Circuit ("Ninth Circuit") seeking permission to appeal the Court's Order

granting the Class Certification Motion. ECF No. 272. Class Representatives opposed the petition. The Ninth Circuit denied Defendants' petition on June 28, 2018. ECF No. 307.

On October 9, 2018, Class Representatives filed an unopposed motion to approve the form and manner of notice to the Class and to appoint Epiq as the Claims Administrator in connection with the dissemination of Class Notice ("Class Notice Motion"). ECF No. 324. The Court granted the Class Notice Motion on December 6, 2018 ("Notice Order"). ECF No. 336. Among other things, the Court found the proposed Class Notice met the requirements of Rule 23 and due process and constituted the best notice practicable under the circumstances. *Id*.

Pursuant to the Court's Notice Order, and beginning on January 9, 2019, Epiq disseminated the Class Notice by mail to potential Class Members. *See* ECF No. 364 at ¶8. The Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the procedures for doing so. *Id*. at Ex. A. The Class Notice also advised Class Members it would be within the Court's discretion whether to permit a second opportunity to request exclusion if there was a settlement. *Id*. The Class Notice informed Class Members if they chose to remain a member of the Class, they would "be bound by all past, present and future orders and judgments in the Action, whether favorable or unfavorable." *Id*. In accordance with the Court's Notice Order, Epiq also caused a summary notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire* on January 14, 2019. *Id*. at ¶12.

On April 18, 2019, Class Representatives submitted the Declaration of Alexander P. Villanova on behalf of Epiq, who reported Epiq had mailed an aggregate of 13,555 Notices to potential Class Members and nominees via first-class mail. *Id*. at ¶11. The deadline for submitting requests for exclusion was April 9, 2019. Five (5) requests for exclusion from the Class were received. *See* Stipulation at Appendix 1; ECF No. 364 at ¶¶16-17, Ex. C.

In the meantime, on April 3, 2019, the Parties conducted an in-person, arm's-length mediation session before private mediator Melnick, in an effort to explore resolving the Action. While the Parties engaged in good-faith negotiations and made certain progress, at the conclusion of the full-day session, the Parties were not close to an agreement to settle.

On April 15, 2019, Defendants filed their motion for summary judgment ("Summary Judgment Motion"). ECF No. 359. That same day, the Parties filed several motions to exclude proposed expert witnesses ("*Daubert* motions"). ECF Nos. 344, 347, 351, 355, 358.

On May 9, 2019, the Court held a mandatory settlement conference before Magistrate Judge Schopler. ECF No. 366. At the settlement conference, the Parties were presented with a mediator's proposal, which was not accepted. ECF No. 367.

Class Representatives opposed Defendants' Summary Judgment Motion on May 24, 2019. ECF No. 394. That same day, the Parties opposed each other's *Daubert* motions. ECF Nos. 373, 376, 379, 381, 386. Defendants' Summary Judgment Motion and the Parties' *Daubert* motions were fully briefed and following oral argument, the Court, by Order dated November 18, 2019, denied Defendants' Summary Judgment Motion, as well as ruled on the Parties' pending *Daubert* motions. ECF No. 470.

Thereafter, the Parties engaged in substantial trial preparations, including submission of proposed exhibit and witness lists; filed 22 *in limine* motions; and exchanged their contentions of law and fact and other key pretrial disclosures. A final pre-trial conference and argument on the Parties' *in limine* motions was held on January 21, 2020. A trial of the Action was scheduled to begin on February 18, 2020.

While trial preparations were ongoing, the Parties agreed to reengage with respect to the possibility of resolving the Action, once again utilizing Melnick and participating in an in-person session in January 2020. Following continued hard-fought, arm's-length negotiations, the Parties accepted the mediator's recommendation

and reached an agreement in principle to resolve the Action for $65 million, subject to documentation. Thereafter, the Parties negotiated the formal Stipulation setting forth the full terms and conditions of the Parties' agreement to settle the Action, which was executed on February 10, 2020, and is submitted herewith.

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[1] "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, at *8 (C.D. Cal. June 12, 2014) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.").

Moreover, the Ninth Circuit expressly recognizes that:

> The Court's role in evaluating the proposed settlement 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.'

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 13296, at *11 (C.D. Cal. Jan. 31, 2014) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1994).

---

[1]   Here, as elsewhere, citations and footnotes have been omitted and emphasis has been added unless otherwise indicated.

Rule 23(e) requires judicial approval for a compromise of claims brought on a class-wide basis. Rule 23(e) ("The claims . . . of a certified class . . . may be settled . . . only with the court's approval."). Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Rule 23(e)(1); and *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Rule 23(e)(2). *See also Elliott*, 2014 U.S. Dist. LEXIS 83796, at *4; *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).

"In the first stage of the approval process, 'the court preliminarily approve[s] the Settlement pending a fairness hearing' and 'authorize[s] notice to be given to the Class.'" *Murillo*, 266 F.R.D. at 473. At this stage, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable, and adequate. *See Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *14-15 (S.D. Cal. Mar. 4, 2010) ("Given that some [] factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'"). Rather, "[t]he question for preliminary approval of a settlement is whether it is 'within the range of reasonableness.'" *Covidien*, 2014 U.S. Dist. LEXIS 13296, at *10. "Preliminary approval is appropriate" if (i) "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations," (ii) "has no obvious deficiencies," (iii) "does not improperly grant preferential treatment to class representatives or segments of the class," and (iv) "falls with the range of possible approval." *Id.*[2]

---

[2]     *See also, e.g., Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) ("'[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'") (quoting Manual for Complex Litigation, Second§ 30.44 (1985).

Rule 23(e), as amended, does not change this fundamental inquiry. Amended Rule 23(e), among other things, specifies that the crux of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," Rule 23(e)(1)(B).[3] The Rule "focus[es]" the Court's inquiry on "the preliminary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal," Rule 23(e)(2) advisory committee's note to 2018 amendment. In this inquiry, the Court evaluates whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). Each of these factors is satisfied here.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's note to 2018 amendment. Courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*; *see also Nguyen v. Radient Pharms. Corp.,* 2014 U.S. Dist. LEXIS 63312,

---

[3]    The Court has already certified the Class in this Action.

at *9 (C.D. Cal. May 6, 2014) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *32 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *id.* at *32-33 ("A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'").

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been litigating this Action since November 2014. At the time of settlement, the Parties had completed comprehensive fact and expert discovery and were nearing trial. Therefore, the Parties' settlement posture was informed by, among other things, significant work performed in responding to two motions to dismiss, substantial discovery efforts, mediation positions and briefing regarding perceived strengths and weaknesses of each side's case, full briefing on class certification and a Rule 23(f) petition to the Ninth Circuit, full briefing on summary judgment, consultation with experts on market efficiency, damages, and causation, and extensive trial preparation and analysis, including disclosing the Parties' expected trial evidence and fully briefing *Daubert* and *in limine* motions. Indeed, this matter was "'hard fought and contentiously litigated throughout.'" *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016) (granting preliminary approval where plaintiffs' counsel "engaged in substantial motion practice"). Accordingly, "both parties had ample time and information to evaluate all aspects of the case, the strength of the factual and legal questions at issue, and the likelihood of prevailing." *Tait v. BSH Home Appliances Corp.*, 2015 U.S. Dist. LEXIS 98546, at *26 (C.D. Cal. July 27, 2015) (approving settlement where "settlement was reached two months before trial was set to commence and only after extensive fact discovery, expert discovery, and motions practice"); *Radient*, 2014 U.S.

Dist. LEXIS 63312, at *8 (parties sufficiently informed where "[a]ll discovery was completed at the time of the settlement").

Additionally, by appointing Class Representatives—two sophisticated institutional investors who claim to have suffered damages as a result of their purchases of SeaWorld common stock during the Class Period—in connection with class certification, the Court already has found them to have claims typical of those of other Class Members. Moreover, like the rest of the Class, Class Representatives have an interest in obtaining the largest possible recovery from Defendants.

*Second*, the Parties' settlement negotiations were at arm's-length and facilitated by experienced mediators. In addition to the two sessions before Magistrate Judge Schopler, the Parties' negotiations included a formal mediation before Melnick on April 3, 2019 and, at Melnick's direction, the preparation and exchange of comprehensive mediation statements. While the April 2019 mediation session ended without a resolution of the Action, the Parties, with the continued assistance of Melnick, engaged in several months of additional negotiations, including another in-person mediation session in January 2020, culminating in Melnick's subsequent issuance of a mediator's proposal that the Action be settled for $65 million, which the Parties accepted. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also, e.g.*, *In re MGM Mirage Secs. Litig.*, 708 Fed. Appx. 894, 897 (9th Cir. 2017).[4]

---

[4]  *See also Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. Nov. 10, 2011) (granting preliminary approval because, *inter alia*, "[t]he parties utilized an impartial mediator, and the matter was 'resolved by means of a mediator's proposal'" and thus was "non-collusive."); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr. 29, 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes" further supporting conclusion that "it was not the result of collusion or bad faith by the parties or counsel."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (same).

Additionally, throughout the Action and settlement negotiations, two separate firms experienced in this type of litigation—Simpson Thacher & Bartlett LLP and Katten Muchin Rosenman LLP—have vigorously represented various Defendants. *See, e.g., Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757, at *16-17 (N.D. Cal. May 30, 1995) ("Defense counsel were equally outstanding"). Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, it deserves preliminary approval. *See Misra v. Decision One Mortg. Co.*, 2009 U.S. Dist. LEXIS 119468, at *24 (C.D. Cal. Apr. 13, 2009) (granting preliminary approval where there was "no evidence of fraud or collusion" and "[t]he parties negotiated the settlement at arm[']s length between experienced counsel representing the interests of the plaintiffs and the defendant").

### 2.    The Settlement's Terms Are Adequate

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Rule 23(e)(2)(C)-(D). Here, the Settlement represents an excellent result for the Class. Furthermore, Class Counsel, with the assistance of Class Representatives' damages expert, have proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses, as it follows Class Representatives' damages expert's report submitted in connection with summary judgment and found by the Court to be sufficiently reliable to surpass *Daubert* scrutiny.

### a.    <u>The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation</u>

A key factor to be considered in assessing the approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. Here, the Settlement provides for an immediate cash

recovery of $65,000,000.00 to be allocated among Class Members following the deduction of Court-approved fees and expenses.

In comparison, if the Action had continued, Class Representatives faced numerous factual and legal risks that could have precluded them from securing any recovery at all on behalf of the Class. To this day, Defendants adamantly deny any wrongdoing. As they did at the motion to dismiss and summary judgment stages, Defendants undoubtedly would have argued at the upcoming trial that the statements at issue were not false at the time they were made and that Class Representatives would be unable to establish that Defendants did not legitimately believe the truth of such statements. Defendants also would argue certain of these statements constituted non-actionable opinions or general statements of corporate optimism. Relatedly, Defendants would argue they did not act with the required intent, or "scienter."

Even if Class Representatives ultimately prevailed in proving materiality, falsity, and scienter, this Action also would have involved significant risks to establishing loss causation and damages. Throughout the Action, Defendants vigorously asserted the price decline in SeaWorld common stock on the alleged corrective disclosure date was caused by factors unrelated to the alleged fraud, as well as that the "truth" regarding Defendants' alleged fraud was revealed prior to the end of the Class Period. Ultimately, resolution of these issues would come down to a "battle of the experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury.

Moreover, even a unanimous jury verdict on each of the above elements would not guarantee a recovery for the Class. Instead, Class Representatives and Class Counsel would then face significant and vigorous post-trial motion practice from Defendants, potential individual trials related to any Class Members for whom Defendants elected to challenge in the claims process, and further appeals to the Ninth Circuit that would further place any Class Member's recovery in jeopardy for years.

The Settlement of $65,000,000.00 represents a substantial percentage of the potential recoverable damages (as estimated by Class Representatives' damages expert) had this Action proceeded to trial. Damages in a securities fraud case are typically presented to the fact finder on a per share basis and are a measure of the artificial inflation in a company's stock price caused by the alleged fraud, after controlling for industry and market factors. The artificial inflation is typically measured by the amount of inflation that leaves the stock, net of industry and market forces, when there is a corrective disclosure. In this case, Class Representatives' damages expert opined that damages were $7.52 per share. In determining the potential aggregate damages that were suffered by the entire class of purchasers of SeaWorld common stock during the Class Period, one must make certain informed assumptions about how many shares were purchased during the Class Period and held over the corrective disclosure. Class Representatives' damages expert used a trading model to estimate the number of shares of SeaWorld common stock purchased during the Class Period and held over the corrective disclosure. This model provides an estimate of the potential class-wide damages. Class Representatives' damages expert's model, after removal of damages associated with purchases related to parties that have already opted out of the Class, estimates potential aggregate damages of approximately $465 million. Accordingly, based on Class Representatives' damages estimate, the Settlement represents approximately 14% of potential aggregate damages.[5]

Thus, the Settlement benefits each Class Member in that he, she, or it will recover a monetary award immediately, without the risk of an unfavorable outcome at

---

[5]   *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, Jan. 29, 2019, https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf, at 35 (between 1996 and 2018 in securities class actions with investor losses between $400 million and $599 million, the median settlement represented a recovery of approximately 1.8% of aggregate investor losses).

trial. The Settlement also avoids the expense and delay of continuing to prosecute this litigation through trial and any appeal.

### b. <u>The Proposed Settlement Does Not Unjustly Favor Any Class Member</u>

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Class. Rule 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation that Class Representatives propose (the "Plan") provides for a straightforward and effective means of distributing the Net Settlement Fund to the Class and treats Class Members equitably relative to each other. *See* Rule 23(e)(2)(D).

Here, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claim Forms demonstrating a loss on their transactions in SeaWorld common stock purchased or otherwise acquired during the Class Period and held through the alleged corrective disclosure on August 13, 2014. The formula to apportion the Net Settlement Fund among Class Members, which was developed in consultation with Class Representatives' damages expert, is based on the estimated amount of artificial inflation in the price of SeaWorld common stock over the course of the Class Period that was allegedly caused by Defendants' misconduct in the exact same per share amount that was submitted by their damages expert in connection with his summary judgment report. Further, the Plan apportions the Net Settlement Fund among Class Members based on when they purchased, acquired, and/or sold their SeaWorld common stock, and was created without consideration of Class Representatives' individual transactions.[6] This method ensures Class Members'

---

[6]     As set forth in the proposed Notice (Ex. A-2 to the Stipulation), based on Class Representatives' damages expert's estimate of the number of shares of SeaWorld common stock purchased or otherwise acquired during the Class Period that may have been affected by the conduct at issue in the Action (excluding shares purchased or otherwise acquired by persons and entities who excluded themselves from the Class in connection with Class Notice and are listed on Appendix 1 to the Stipulation), and assuming that all Class Members elect to participate in the Settlement, the estimated average recovery per eligible share of SeaWorld common stock (before deducting any

recoveries are based upon the relative losses they sustained, and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Accordingly, the Plan applies in an equitable manner to all Class Members. *See Radient*, 2014 U.S. Dist. LEXIS 63312, at *12 ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *Ansell v. Laikin*, 2012 U.S. Dist. LEXIS 198468, at *24 (C.D. Cal. July 11, 2012) (finding that "Plan of Allocation, which distributes the proceeds of the net settlement fund on a pro rata basis, based on the claimant's recognized claim amounts, is fair and reasonable").[7]

### c.  The Anticipated Request for Attorneys' Fees is Reasonable

The proposed Notice provides that Class Counsel, on behalf of all Plaintiffs' Counsel, will apply for an award of attorneys' fees not to exceed 22% of the Settlement Fund, plus reimbursement of reasonable expenses incurred in prosecuting the Action. A fee of up to 22% is eminently reasonable here and is fully supported by Ninth Circuit case law. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (the Ninth

---

Court-approved fees, expenses, and costs as described in the Notice) is approximately $1.05. This is only an estimate, and some Class Members may recover more or less than this amount depending on, *inter alia*: (i) when and the price at which they purchased/acquired shares of SeaWorld common stock; (ii) whether they sold their shares of SeaWorld common stock and, if so, when; (iii) the total number and value of valid Claims submitted; (iv) the amount of Notice and Administration Costs; and (v) the amount of attorneys' fees and Litigation Expenses awarded by the Court.

[7]   The proposed Notice (Ex. A-2 to the Stipulation) also explains that Class Counsel's request for expenses may include a request for reimbursement of Class Representatives' reasonable costs and expenses directly relating to their representation of the Class, as permitted by the PSLRA, in an aggregate amount not to exceed $150,000. *See* 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

Circuit has established 25% of the common fund as a "benchmark" for what constitutes a reasonable fee). Moreover, there is ample precedent in this District for granting attorneys' fees of 25% (or greater) in securities class actions. *See, e.g., HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 U.S. Dist. LEXIS 109829, at \*7 (S.D. Cal. Oct. 15, 2010) (finding Lead Counsel's requested benchmark fee award of 25% "reasonable in light of the amount of efforts expended to achieve the settlement").

A fee of up to 22% of the Settlement Fund would also befit the substantial risks Class Counsel undertook in pursuing the claims in this Action, their extensive litigation efforts, and the excellent recovery obtained for the benefit of the Class.[8]

### d. Class Representatives Have Identified All Agreements Made in Connection with the Settlement

In connection with the Settlement, the Parties also have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated February 10, 2020 ("Supplemental Agreement"). *See* Stipulation ¶37. However, the Supplemental Agreement is only applicable in the event the Court provides Class Members a second opportunity to exclude themselves from the Class in connection with the settlement proceedings, which, as explained in detail below, is not required.

If a second opportunity for exclusion is ordered by the Court, the Supplemental Agreement sets forth the conditions under which SeaWorld may exercise a right to terminate the Settlement in the event that requests for exclusion from the Class exceed

---

[8] Additionally, the proposal that Class Counsel receive their award of attorneys' fees upon issuance of an order awarding such fees is appropriate and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Class Counsel will refund or repay the subject amount to the Settlement Fund. *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at \*1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest . . . ."); *In re AXA Rosenberg Inv'r Litig.*, 2012 WL 12920617, at \*2 (N.D. Cal. Apr. 2, 2012) (same).

certain agreed-upon conditions stated in the Supplemental Agreement ("Termination Threshold").[9] As is standard practice in securities class actions, the Supplemental Agreement is not being made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Termination Threshold to extract an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Stipulation and Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

## IV. THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B). Further, Rule 23(e)(1) requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Rule 23(e)(1). Moreover, notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Notice that is mailed to each member of a class "'who can be identified through reasonable effort' constitutes reasonable notice." *Covidien*, 2014 U.S. Dist. LEXIS 13296, at *13.

Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Claims Administrator will mail the Postcard Notice to all persons and entities who were previously mailed a copy of the Class Notice and any other potential Class Members who otherwise can be identified through reasonable efforts.[10] The Postcard Notice will provide important

---

[9] This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

[10] The Court previously appointed Epiq as the Administrator to supervise and administer the Class Notice. ECF No. 336. Class Representatives hereby request the

information regarding the Settlement, along with the rights of Class Members in connection therewith, and will direct recipients to the website, www.SeaWorldSecuritiesLitigation.com (the "Settlement Website") for more information regarding the Settlement, including a downloadable version of the long-form Notice.[11]

The Parties further propose to supplement the Postcard Notice with the Summary Notice—which provides additional notice of the proposed Settlement—to be published in accordance with the terms of the Preliminary Approval Order to be entered by the Court. Class Counsel will also make copies of the detailed long-form Notice and Claim Form available on www.SeaWorldSecuritiesLitigation.com, along with other documents and information relevant to the Settlement.[12]

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notice satisfies these requirements, as both the Postcard Notice and Notice specifically advise Class Members that Class Counsel will apply to the Court for attorneys' fees not to exceed 22% of the Settlement

---

Court authorize Class Counsel to retain Epiq as the claims administrator for the Settlement. *See* Stipulation, Ex. A ¶ 4.

[11] Courts routinely allow notice by postcard, such as Class Representatives are proposing here. *See, e.g.*, *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (approving "short-form notice to the proposed settlement class sent as a postcard and a long-form notice distributed via the Internet"); *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 156 (E.D. Pa. 2016) (approving "notice by newspaper publication, through a website dedicated to this matter, and by postcard mailing"); *see also In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (GHW) (S.D.N.Y. July 24, 2019), ECF No. 197 at 5 (approving notice through "mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form on the Settlement Website, and the publication of the Summary Notice"); William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015) ("[N]umerous courts have held that postcard notice is 'more than sufficient.'") (collecting cases). Such notice is particularly appropriate in a case such as this with a certified class that already has been provided notice and an opportunity to opt-out.

[12] The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A-2 and A-3, respectively.

Fund and reimbursement of Litigation Expenses in an amount not to exceed $2.8 million to be paid from the Settlement Fund.

The proposed notice also includes all of the information required by the PSLRA, as well as additional information.[13] Collectively, the proposed forms of notice describe the proposed Settlement and set forth, among other things: (i) the nature, history, and status of the litigation; (ii) the definition of the Court-certified Class and who is excluded from the Class; (iii) the reasons the Parties have proposed the Settlement; (iv) the amount of the Settlement; (v) the estimated average recovery per damaged share; (vi) the Class's claims and issues; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Class Counsel intend to seek in connection with final settlement approval, which amount may include an application for reimbursement of the reasonable costs and expenses incurred by Class Representatives directly related to their representation of the Class; (ix) the proposed plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and place of the final Settlement Fairness Hearing.

Additionally, the proposed notices discuss the rights Class Members have in connection with the Settlement, including: (i) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (ii) the right to participate in the Settlement and instructions on how to complete and submit a Claim

---

[13]   Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (ii) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter [], a statement from each settling party concerning the issue or issues on which the parties disagree;" (iii) "a statement indicating which parties or counsel intend to make []an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (iv) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7)(E).

Form to the Claims Administrator. The notices also provide contact information for Class Counsel and counsel for Defendants, as well as the postal address for the Court.

As detailed above, the robust notice program proposed in connection with the Settlement and the form and content of the Postcard Notice, Notice, Summary Notice and Claim Form easily satisfy the requirements of the Federal Rules of Civil Procedure and the PSLRA. Moreover, courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA.[14] Accordingly, in granting preliminary approval of the Settlement, Class Representatives respectfully request the Court also approve the proposed form and method of giving notice of the Settlement to the Class.

## V. THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD

In January 2019, Epiq began the extensive notice campaign, which disseminated the Class Notice to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion from the Class and the procedures for doing so. *See* ECF No. 364.[15] Both the Class Notice and the summary Class Notice advised recipients that, pursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second opportunity to request exclusion from

---

[14] *See, e.g., In re Med. Capital Sec. Litig.*, Case No. 10-2145-DOC (RNBx), slip op. ¶ 19 (C.D. Cal. May 6, 2013) (approving notice by mail to previously notified Class Members at last known addresses and publication of summary notice in *USA Today*); *Middlesex Retirement System, et al. v. Quest Software, et al.*, Case No. 2:06-06863-DOC (RNBx) (C.D. Cal. Dec. 7, 2009) (approving notice by mail and publication of summary notice in *Wall Street Journal*); *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (Fourth) §21.311 (2004) ('"Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort."')).

[15] Epiq reported mailing over 13,555 copies of the Class Notice to potential Class Members and nominees. *See* ECF No. 364 ¶11. Epiq also published a summary Class Notice in *Investor's Business Daily*, and transmitted it over the *PR Newswire*, informing Class Members of the pendency of the Action and their right to request exclusion from the Class. *See id.* ¶12, Ex. B.

---

the Class if there is a settlement or judgment in the Action after a trial and appeal. *See* ECF No. 364 at Ex. A & B. Moreover, both the Class Notice and the summary Class Notice made clear that Class Members would "be bound by all past, present and future orders, and judgments in the Action, whether favorable or unfavorable"—if they failed to exclude themselves from the Class. *Id*. In response to this notice campaign, five (5) potential Class Members (as listed on Appendix 1 to the Stipulation) requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so.

The Ninth Circuit repeatedly has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out when such Class Members already received extensive notice and ample opportunity to opt out of the Class, as they did here:

> [There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal. Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.

*Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982)).[16]

---

[16]     *See also Rodriguez v. W. Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74849, at *68 (C.D. Cal. Aug. 10, 2007) ("[a] second opt-out [period] is not required."); *Med. Capital*, slip op. ¶¶ 7-9 (precluding class members "from having a second opportunity to exclude themselves from the [Settlement] Class" because the "previous class notice provided adequate information to Class Members about their rights and the claims in the Class Action, and informed Class Members that they would be bound by any judgments that the Court makes in this case if they did not exclude themselves from the Class at that time."). Courts routinely decline to provide a second opt-out period when, as here, the class received an opportunity to opt out following class certification. *See, e.g., Pace v. PetSmart*, No. 8:13-cv-00500-DOC-RNB, slip op. ¶¶ 3-4, 17 (C.D. Cal. Jan. 14, 2015) ("With respect to those class members who have already received class notice and have not opted-out, they are now bound by this Settlement and cannot opt-out."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (holding that the requirements of the Due Process Clause and Rule 23 were satisfied because the class "had been given notice of the action, the opportunity to opt

In this case, there is no reason to depart from standard practice and require a second opt-out opportunity. The response to the widespread notice program in connection with class certification demonstrates it was effective and the new developments that have occurred since Class Members made their decision of whether to opt-out—namely, vigorous litigation to the eve of trial that culminated in a substantial recovery—provide a clear benefit to the Class and negate any potential prejudice from disallowing a second opt out.[17] Accordingly, the Court should exercise its discretion to preclude a second opt-out opportunity.

## VI. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events. The Parties propose the following schedule, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Fairness Hearing is scheduled:

| Event | Proposed Time for Compliance |
| --- | --- |
| Deadline for mailing the Postcard Notice to Class Members ("Notice Date") | Twenty (20) business days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶4(a)) |
| Deadline for publishing the Summary Notice | Ten (10) calendar days after the Notice Date (Preliminary Approval Order ¶4(c)) |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and the request for attorneys' fees and Litigation Expenses | Thirty-five (35) calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶22) |
| Deadline for filing an objection to the Settlement, Plan of Allocation, and/or the request for attorneys' fees and Litigation Expenses | Twenty-one (21) calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶¶12-13) |
| Deadline for filing reply papers | Seven (7) calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order ¶22) |

---

out [following class certification], notice of the proposed settlement, and the opportunity to object" and objector "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement").

[17]    Moreover, there is an independent reason for the Court to preclude a second opt-out opportunity—even if a Class Member desired to opt out of the Class at this time, because five years have passed since the last alleged misrepresentation was made, the federal securities claims covered by the Action would be time-barred by the applicable statute of repose. *See CALPERS v. ANZ Secs., Inc.*, 137 S. Ct. 2042, 2052-55 (2017).

| Settlement Fairness Hearing | At the Court's convenience, at least one hundred ten (110) calendar days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶2) |
|---|---|
| Deadline for submitting Claim Forms | One hundred and twenty (120) calendar days after the Notice Date (Preliminary Approval Order ¶8) |

If the Court agrees with the proposed schedule, Class Representatives request the Court schedule the Settlement Fairness Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## VII. CONCLUSION

Based on the foregoing, Class Representatives respectfully submit that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval. Class Representatives respectfully request the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of giving notice of the Settlement to the Class; and (iii) schedule a hearing date and time to consider final approval of the Settlement and related matters.

DATED: February 11, 2020        Respectfully submitted,

**KESSLER TOPAZ MELTZER
& CHECK, LLP**

*/s/ Joshua E. D'Ancona*
Gregory M. Castaldo
Joshua E. D'Ancona
Joshua A. Materese
Samuel C. Feldman
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
gcastaldo@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com

1

sfeldman@ktmc.com

2

-and-

3

Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850

4

San Francisco, CA 94104

5

Tel: (415) 400-3000
Fax: (415) 400-3001

6

skaplan@ktmc.com

7

8

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich

9

Bradley E. Beckworth
Cody L. Hill

10

3600 N. Capital of Texas Hwy.

11

Suite B350
Austin, TX 78746

12

Tel: (512) 328-5333

13

Fax: (512) 328-5332
jangelovich@nixlaw.com

14

bbeckworth@nixlaw.com

15

codyhill@nixlaw.com

16

-and-

17

Susan Whatley
P.O. Box 178

18

Linden, TX 75563

19

Tel: (903) 215-8310
swhatley@nixlaw.com

20

21

*Co-Class Counsel for Class Representatives*
*and the Class*

22

23

**NOONAN LANCE BOYER**
   **& BANACH LLP**

24

David J. Noonan (Bar No. 55966)

25

Ethan T. Boyer (Bar No. 173959)
701 Island Avenue, Suite 400

26

San Diego, CA 92101

27

Tel: (619) 780-0880
dnoonan@noonanlance.com

28

1                                       eboyer@noonanlance.com

2

3                                        *Liaison Counsel for the Class*

4                                        **KEIL & GOODSON P.A.**

5                                        John C. Goodson

6                                        406 Walnut Street

                                        Texarkana, AR 71954

7                                        Tel: (870) 772-4113

8                                        jcgoodson@kglawfirm.com

9                                        **GRANT & EISENHOFER P.A.**

10                                      Jeff A. Almeida

                                        123 Justison Street

11                                        7th Floor

12                                        Wilmington, DE 19801

13                                        Tel: (302) 622-7000

                                        Fax: (302) 622-7100

14                                        jalmeida@gelaw.com

15                                        *Additional Counsel for Class Representatives*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system. Based upon the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Chet A. Kronenberg | ckronenberg@stblaw.com |
| Jonathan K. Youngwood | jyoungwood@stblaw.com |
| Janet A. Gochman | jgochman@stblaw.com |
| Meredith D. Karp | meredith.karp@stblaw.com |
| Dean M. McGee | dean.mcgee@stblaw.com |
| Michael J. Diver | michael.diver@kattenlaw.com |
| Michael J. Lohnes | michael.lohnes@kattenlaw.com |
| Richard H. Zelichov | richard.zelichov@kattenlaw.com |
| Gil M. Soffer | gil.soffer@kattenlaw.com |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Joshua E. D'Ancona*
Joshua E. D'Ancona